UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAWN M. P., Individually and on behalf of E.P., and E.P.,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS, an independent licensee of the BLUE CROSS BLUE SHIELD ASSOCIATION; MICROSOFT CORPORATION; and the MICROSOFT CORPORATION PREMERA BLUE CROSS HEALTH SAVINGS PLAN,<br><br>Defendants. | Case No.:<br><br>Honorable<br><br>**COMPLAINT** |

Plaintiffs Dawn M. P. ("Dawn") and E.P., through their undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

**INTRODUCTION**

E.P. received over three months of medical treatment at Open Sky Wilderness Therapy ("Open Sky"). Defendants denied payment for any of this treatment, requiring Dawn to pay over $54,000 out-of-pocket. Defendants' eventual grounds for denying benefits were that E.P.'s treatment was "not covered" under Dawn's health plan and that Defendants had not received some claims in a timely fashion. This litigation thus centers around those narrow issues. The following allegations are made without the benefit of the full administrative record, portions of which are in

COMPLAINT
Page - 1

the sole possession of Defendants. The full administrative record is incorporated herein by reference.

## PARTIES, JURISDICTION, AND VENUE

1. Dawn was, at all times relevant hereto, a resident of King County, Washington.

2. E.P. is Dawn's daughter.

3. Premera Blue Cross ("Premera") is a Blue Cross Blue Shield-licensed insurance company headquartered in Snohomish County, Washington.

4. Microsoft Corporation ("Microsoft") was, at all times relevant hereto, Dawn's employer.

5. Through her employment, Dawn was, at all times relevant hereto, a participant in the Microsoft Corporation Welfare Plan ("the Plan"), and E.P. was Dawn's dependent and a beneficiary. The Plan is headquartered in King County, Washington.

6. Microsoft is named as the "Plan sponsor," as well as the "Plan Administrator and named fiduciary" of the Plan.[1]

7. The Plan is a self-funded group health and welfare benefits plan under 29 U.S.C. § 1001 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

8. Microsoft "has the authority to delegate the day-to-day administrative duties to a third party."[2]

9. Premera is designated as "administering coverage under this plan."[3]

10. The Plan also references Premera as the "plan administrator."[4]

11. This lawsuit is brought to obtain an Order requiring Defendants to pay or reimburse expenses incurred during E.P.'s treatment at Open Sky. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B), appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violations of the Mental Health Parity and Addiction Equity Act of 2008 ("the MHPAEA"), an

---

[1] 2022 SPD at 460.
[2] *Id.* at 461.
[3] *Id.* at 47.
[4] *Id.* at 18.

COMPLAINT
Page - 2

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

award of pre-judgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

12. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

13. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c).

## The Plan

14. The Plan issued a "2022 Summary Plan Description," (the "2022 SPD") which stated as follows:

> This document is intended to serve as a Summary Plan Description (SPD) as defined by the Employee Retirement Income Security Act of 1974 (ERISA) for such programs described within that are governed by ERISA. The terms and conditions of the Microsoft Corporation Welfare Plan (Plan) are set forth in this SPD, in the Microsoft Corporation Welfare Plan wrap document (the "Welfare Plan"), the Benefits@Microsoft Program, the Microsoft Healthercare Reimbursement Plan, the Microsoft Dental and Vision Care Reimbursement Plan, the Microsoft Dependent Care Reimbursement Plan, and in the insurance policies and other component plan documents incorporated into the Welfare Plan. The Welfare Plan together with this SPD and the other incorporated documents constitute the written instruments under which the Plan is established and maintained. Where there is an inconsistency or ambiguity between the terms of the Welfare Plan and the terms of a certificate of coverage for insured benefits, the terms of the certificate of coverage control when describing specific benefits that are covered or insurance-related terms. Where there is an inconsistency or ambiguity between the terms of the Welfare Plan and this SPD, the terms of the Welfare Plan control.[5]

15. Defendants did not provide Plaintiffs with any document other than the 2022 SPD as part of the claims and appeals process described herein.

16. The 2022 SPD further stated that "If all or part of your claim is denied, Premera will send you an Explanation of Benefits (EOB) or other notices with the following information: . . . Reference to the specific plan provisions on which the denial is based."[6]

---

[5] *Id.* at 3.
[6] *Id.* at 102.

COMPLAINT
Page - 3

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

17. The SPD contains the following provision: "What the plan covers," which explains, "The tables below summarize what the Health Savings Plan covers, including what the plan pays for in-network and out-of-network care."

18. In that section, there is a row in the table entitled: "Mental health counseling, mental health inpatient and outpatient services, and chemical dependency treatment."[7]

19. In relevant part, the 2022 SPD stated that "In-network coverage" for such treatment was "90% after deductible for inpatient and outpatient service" and "Out-of-network coverage" was "90% of allowable charges, after deducitble for inpatient and outpatient services."[8]

20. Later in the 2022 SPD, the following explanation of covered services for "Mental health counseling, mental health inpatient and outpatient services, and chemical dependency treatment" appears:

> This benefit covers medically necessary treatment for:
>
> • mental health conditions such as, but not limited to the diagnosis and treatment stress, anxiety, or depression, or other psychiatric disorders, eating disorders, attention deficit disorder (ADD), attention deficit hyperactivity disorder (ADHD)
> • chemical dependency such as substance use disorder and alcohol use disorder
>
> To be covered, services must be furnished by an eligible provider. All mental health and chemical dependency treatment must be medically necessary to be eligible for coverage.
> …
>
> **Eligible providers**
>
> Eligible providers include:
>
> • A facility licensed as a hospital or community mental health agency to provide mental health and/or substance abuse services
> • A physician, psychiatrist, psychologist, or psychiatric nurse practitioner licensed to provide mental health or substance abuse services
> • A master's level mental health provider licensed, registered, or certified as legally required to provide mental health services
> • Any other provider or facility who is licensed or certified by the state in which the care is rendered and who is providing care within the scope of their license or certification.[9]

21. Finally, that same section stated as follows:

---

[7] *Id.* at 52
[8] *Id.*
[9] *Id.* at 74-75 (bold in original).

COMPLAINT
Page - 4

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

**Additional exclusions and limitations for mental health and chemical dependency**

In addition to the plan's exclusions and limitations, the following exclusions and limitations apply to this benefit:

…

• Educational or recreational therapy or programs; this includes, but is not limited to, boarding schools and wilderness programs. Benefits may be provided for medically necessary treatment received in these locations if treatment is provided by an eligible provider, provided that educational or recreational therapy or programs, themselves, are not eligible providers for this purpose.[10]

### Plaintiffs' Claims and Defendants' Denials

22. E.P. received medical care and treatment at Open Sky from April 19, 2022 through July 13, 2022 for major depression, PTSD, social anxiety disorder, and a substance abuse disorder.

23. Open Sky is located in Colorado. Open Sky is a 24/7 outdoor behavioral health treatment facility that is duly licensed by the state of Colorado to provide these outdoor behavioral health services to adolescents, as required by the governing Colorado state regulations. Open Sky is accredited by a national organization.

24. Premera sent Plaintiffs three explanation of benefits notices ("EOBs") on July 29, 2023 for service dates of April 19, 2022, May 1, 2022, and May 16, 2022.

25. Each of these EOBs denied Plaintiffs' claims for benefits for medical services at Open Sky with the same note: "F75 Our medical staff reviewed this claim ad determined this service is not covered by your plan."

26. Premera did not cite any specific provision upon which this determination was based of the Plan as required by the terms of the Plan.

27. While Open Sky submitted additional claims for June 1, 2022, June 16, 2022, and July 1, 2022 on Plaintiffs' behalf, Defendants did not give Plaintiffs notice that those claims had been formally denied until after Plaintiffs filed their first level one appeal, as explained further below.

---

[10] *Id.* at 75 (bold in original).

COMPLAINT
Page - 5

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

**Plaintiffs' First Level One Appeal**

28. On January 16, 2024, Dawn submitted the first of two Level One Member Appeal (the "First Level One Appeal").

29. Dawn reminded Premera/the Plan of their responsibilities under ERISA, including to "Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."

30. She also reminded Premera of the following requirements for its response to the appeal:

> **"The notification shall set forth, in a manner calculated to be understood by the claimant—**
> **(i)    The specific reason or reasons for the adverse determination;**
> **(ii)   Reference to the specific plan provisions on which the determination is based;**
> **(iii)  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary."**

(Bold in original.)

19. Dawn requested "a physical copy of any and all documentation related to both the initial determination and the level one appeal determination, including the reviewer's name, credentials, experience, and case notes or report."

20. To help ensure a full, fair, and thorough review of the appeal, Dawn requested an expert knowledgeable about generally accepted standards and practices for intermediate outdoor behavioral health programs in Colorado, as well as someone trained in the details of the MHPAEA.

21. Dawn explained that she had obtained the 2023 Summary Plan Description for the Plan (the "2023 SPD") and cited the following Plan language from the Plan's "Mental Health Counseling, Mental Health Inpatient and Outpatient Services, and Chemical Dependency Treatment" heading:

COMPLAINT
Page - 6

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

> **Inpatient and Outpatient:**
>
> **• 100%, up to calendar year visit limits through Microsoft CARES employee assistance program**
> **• In-network: 90%, deductible applies**
> **• Out-of-network: 90% of allowable charges, deductible applies**
>
> **This benefit covers medically necessary treatment for:**
>
> **• mental health conditions such as, but not limited to the diagnosis and treatment stress, anxiety, or depression, or other psychiatric disorders, eating disorders, attention deficit disorder (ADD), attention deficit hyperactivity disorder (ADHD)**
>
> **• chemical dependency such as substance use disorder and alcohol use disorder**
>
> **To be covered, services must be furnished by an eligible provider.**
>
> **All mental health and chemical dependency treatment must be medically necessary to be eligible for coverage.**

(Bold in original.)

22. While the coverage language Dawn quoted was from the 2023 SPD, it was substantially the same as the coverage language from the 2022 SPD.

23. Dawn further quoted the flowing language from the 2023 SPD from the "Eligible Provider" heading:

> **Eligible providers include:**
>
> **• A facility licensed as a hospital or community mental health agency to provide mental health and/or substance abuse services**
> **• A physician, psychiatrist, psychologist, or psychiatric nurse practitioner licensed to provide mental health or substance abuse services**
> **• A master's level mental health provider licensed, registered, or certified as legally required to provide mental health services**
> **• Any other provider or facility who is licensed or certified by the state in which the care is rendered and who is providing care within the scope of their license or certification.**

(Bold in original.)

24. Dawn correctly asserted that Open Sky met these requirements, explaining that "Open Sky is a 24/7 outdoor behavioral health treatment facility that is duly licensed by the state of Colorado to provide these outdoor behavioral health services to adolescents, as required by the governing

COMPLAINT
Page - 7

Colorado state regulations. In addition, Open Sky is accredited by a national organization, which further demonstrates their commitment to excellence in healthcare.

25. Dawn correctly concluded that, "Based on Open Sky's license, accreditation, governing state regulations, and the terms and provisions of our plan, it is clear that [E.P.'s] claims from Open Sky meet our plan's requirements for reimbursable mental health care benefits."

26. Dawn expressed concern that Premera and the Plan might be applying inequitable treatment limitations of the kind prohibited by the MHPAEA. Among other things, she noted that, because the Plan provides coverage for the treatment of behavioral health conditions and medical conditions, it was obligated to administer those benefits at parity with one another. As proof of Premera's obligation, Dawn cited case law clarifying that skilled nursing facilities, subacute rehabilitation facilities, and inpatient hospice facilities are analogous to intermediate outdoor behavioral health programs.

27. Dawn asserted that because Open Sky provided services less intensive than acute hospitalization and more intensive than outpatient therapy, Open Sky qualified as an intermediate behavioral health facility under the MHPAEA.

28. She pointed out that MHPAEA violations can occur when a Plan imposes treatment limitations on behavioral health benefits that are more restrictive than those imposed on medical/surgical benefits in the same class.

29. Under the MHPAEA, these unlawful restrictions may come in two forms: quantitative treatment limitations (QTLs), expressed numerically; and non-quantitative treatment limitations (NQTLs), which seek to limit the scope or duration of benefits.

30. Dawn noted that the restrictions, requirements, and standards for administering behavioral health benefits – such as restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the Plan or coverage – cannot be more intensive than those for comparable medical or surgical services.

31. She again cited case law to further explain the two forms of treatment limitations under the MHPAEA:

COMPLAINT
Page - 8

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

> **Treatment limitations that violate the Parity Act may be found on the face of the Plan's terms or when the Plan is applied unequally in practice. In other words, "disparate treatment limitations that violate the Parity Act can be either facial (as written in the language or the processes of the plan) or as-applied (in operation via application of the plan)."**

(Bold in original.)

32. In this case, Dawn was concerned that the language of the Plan imposed a facial form of NQTL on Open Sky under facility type or provider specialty because the claims were billed using the revenue code 1006.

33. Dawn believed Premera therefore flagged her claims for automatic denial despite Open Sky having met the Plan's requirements as an eligible facility. She significantly doubted that Premera had ever denied payment for an intermediate medical facility using these NQTLs, further suggesting that the limitation applies only to behavioral health benefits.

34. Further, as she highlighted, multiple federal courts have found the categorical exclusion of outdoor behavioral health, or wilderness, programs to be a discriminatory limitation that violates the MHPAEA. Dawn attached to her letter the district court's decision in *Johnathan Z. v. Oxford Health Plans*, which stated:

> This court has ruled that the categorical exclusion of certain types of mental health/substance abuse care is a treatment limitation under the Parity Act.[11]
>
> The court has observed that 'in practice, wilderness camp exclusions have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of the limitation is that it imposes a limit on mental health treatment that does not apply to medical or surgical treatment.'[12]
>
> Plaintiffs have sufficiently alleged that the Plan categorically excludes mental health/substance abuse care that is generally accepted as medically necessary by applying more restrictive treatment limitations 'based on geographic location, facility type, [or] provider specialty,' to wilderness therapy and transitional living centers than it would use for medically-necessary medical/surgical care.[13]
>
> Stated differently, the purported categorical exclusion of wilderness therapy and transitional living centers based on the Plan terms may impose a more

---

[11] 2:18-cv-383 JNP-PMW, 2020 WL 607896, *41 (D. Utah Feb. 7, 2020)
[12] *Id.* at *47.
[13] *Id.* at *49 (citations omitted).

COMPLAINT
Page - 9

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

      restrictive limitation based on location, facility type, or provider specialty for medically necessary mental health/substance abuse treatment than for medical/surgical care. For wilderness therapy, "excluding mental health treatment merely because it occurs outdoors appears to place a limitation on mental health" that is different or more restrictive than limitations placed on medical/surgical conditions.[14]

35. Dawn argued that Premera and the Plan were likewise imposing an impermissible NQTL on her claims for E.P.'s treatment at Open Sky based on facility type, and she challenged Premera to provide proof of the same exclusion being used to deny benefits for treatment in intermediate medical or surgical facilities.

36. Dawn requested that the Plan's review include a parity analysis to determine whether it truly was being administered in compliance with the MHPAEA.

37. In the event her appeal was denied, Dawn requested physical copies of any and all documentation used in conducting the requested parity analysis. She asked that the Plan administrator provide details regarding: "(1) the specific plan language regarding the above limitation and identify all of the medical/surgical and mental health and substance use disorder benefits to which it applies (or does not apply) in the relevant benefit classification; (2) the factors used in the development of the limitation; (3) the evidentiary standards used to evaluate the factors; (4) the methods and analysis used in the development of the above limitation; and (5) any evidence and documentation to establish that the limitation is applied no more stringently, as written and in operation, to mental health and substance use disorder benefits than to medical and surgical benefits."

38. She noted that the Plan fiduciary was legally obligated to produce this documentation to her upon request.

39. Dawn requested that, should the claim not be paid, she receive a copy of all documents under which the Plan is operated, including all governing Plan documents, the Summary Plan Description, any insurance policies in place for the benefits sought, and any existing administrative services agreements.

---

[14] Id. at *50 (citation omitted).

COMPLAINT
Page - 10

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

40. She also requested any clinical guidelines utilized in the Plan's determination, including "the plan's mental health, substance use disorder, skilled nursing facility, subacute inpatient rehabilitation, hospice or other intermediate medical/surgical or mental health and substance use disorder criteria, regardless of whether the criteria were used to evaluate this claim."

41. Dawn requested any reports or opinions provided from any physician or other professional, as well as the names, qualifications, and healthcare claim denial rates of all individuals who reviewed or were consulted about her claim.

42. She acknowledged that the Plan had a 60-day timeframe in which to respond to her First Level One Appeal.

### First Level One Denial

43. On behalf of the Plan, Premera sent Dawn a letter dated February 27, 2024 ("First Level One Denial").

44. In the First Level One Denial, Premera offered the following rationale for the denial: "This decision was made on the plan language, which states Wilderness therapy is not covered. This decision is not based on medical necessity, nor is it intended as a judgment on [E.P.'s] treatment plan. This denial is for payment purposes only."

45. Premera indicated in the First Level One Denial that had assigned the following claim denial code to Plaintiffs' claims: "F75- Our medical staff reviewed this claim and determined this service is not covered by your plan."

46. In its letter, Premera included the following language from the 2022 SPD, without citing any page number:

> Mental health counseling, mental health inpatient and outpatient services. and chemical dependency treatment
> In addition to the plan's exclusions and limitations, the following exclusions and limitations apply to this benefit:
> • Educational or recreational therapy or programs: this includes, but is not limited to, boarding schools and wilderness programs. Benefits may be provided for medically necessary treatment received in these locations if treatment is provided by an eligible provider. provided that educational or recreational therapy or programs. themselves, are not eligible providers for this purpose.

COMPLAINT
Page - 11

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

> Exclusions and limitations
> Services or supplies for any of the following:
> • Educational or recreational therapy or programs; this includes. but is not limited to. boarding schools and wilderness programs. Benefits may be provided fer medically necessary treatment received in these locations if treatment is provided by an eligible provider, provided that educational or recreational therapy or programs. themselves, are not eligible providers for this purpose.

47. In response to Dawn's concerns regarding the MHPAEA, Premera stated:

> The Mental Health Parity and Addiction Equity Act (MHPAEA) and its implementing regulations require that a plan that provides intermediate level of care for medical and surgical services also cover intermediate level of care for mental health services. Premera does cover intermediate and residential care for mental health and for medical and surgical
> services and is in compliance with parity requirements. For example, Premera covers residential treatment centers for mental health services. What Premera does not cover is wilderness programs, regardless of the nature of the facility associated with the wilderness program. The plan bases decisions to cover services on a number of considerations, such as whether the service is generally accepted in the medical community as an effective medical treatment, the availability of scientific research addressing the services medical efficacy, the existence and pervasiveness of state licensing standards for providers of the service, and whether there are generally accepted medical standards for evaluating medical necessity. These considerations apply both to services to treat mental health/substance use conditions and to services to treat medical and surgical conditions. While the plan does not cover wilderness programs. it does allow coverage for medically necessary treatments, such as mental health counseling, from an eligible, licensed provider that may have been provided during the stay at Open Sky Wilderness Therapy. You may submit claims for these services no later than 12-months from the date of service.

48. Premera provided Dawn with a "Mental Health Parity analysis" dated February 22, 2024.

49. Finally, Premera asserted that they "never received claims" for E.P.'s dates of service of June 1, 2022, June 16, 2022, and July 1, 2022, and that those "claims are now untimely for submission."

## Plaintiffs' Second Level One Appeal

50. Dawn then submitted a second level one appeal dated May 14, 2024 regarding services E.P. received at Blue Sky from June 1, 2022 to July 13, 2022.

51. Dawn disputed Premera's assertion in the First Level One Denial that Plaintiffs had submitted claims related to that service in a timely fashion.

COMPLAINT
Page - 12

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

52. Dawn explained that her healthcare advocates had created and submitted claims related to those services on April 6, 2023, making them timely.

53. Dawn further stated that her healthcare advocates had contacted Blue Cross Blue Shield of Colorado ("BCBS Colorado"), the "home plan" for claim submission purposes under the Plan, on March 13, 2024.

54. Dawn reported that her healthcare advocate had been told by a person from BCBS Colorado that they had received claims from June 1, 2022, June 16, 2022, and July 1, 2022, each with their own clam number, but that BCBS Colorado had rejected them for having an "invalid revenue code."

55. Based on this information, it is clear that Premera had received Plaintiffs' claims for those dates and had rejected them for because of the nature of the billing code, not for timeliness.

56. Premera did not respond at all to the Plaintiffs' Second Level One Appeal.

**Post-claim Preparation for Litigation and Retention of Counsel**

57. After receiving Premera's First Level One Appeal Denial, Plaintiffs and exhausted their internal appeals process, so their only option was litigation to enforce their right to benefits owing under the Plan and to seek reimbursement for expenses under the terms of the Plan (as written or as reformed or required by ERISA), and/or under the MHPAEA amendments to ERISA.

58. After the conclusion of the claim process, Plaintiffs engaged a subject matter expert to assist them in performing necessary pre-Complaint functions, including:

    a. preparing the file for use in litigation;

    b. screening potential attorneys to pursue litigation;

    c. preparing and obtaining authorizations for attorneys to receive information regarding the file; and

    d. transferring the file to the selected attorneys for litigation and engaging in communication and dialogue regarding the same.

67. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

COMPLAINT
Page - 13

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

68. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violations of the MHPAEA, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

**FIRST CAUSE OF ACTION**
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

69. All allegations of this Complaint are incorporated here as though fully set forth herein.

70. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Premera, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

71. Premera and the Plan wrongly excluded coverage for E.P.'s treatment at Open Sky in violation of the terms of the Plan, which promise benefits to participants and beneficiaries for medically necessary treatment of behavioral and mental health disorders and substance abuse.

72. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

73. Premera's First Level One Appeal Denial demonstrates the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Premera did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised therein.

74. Likewise, the Plan exclusions Premera cited in justifying the denial of Plaintiffs' claims do not, on their face, apply to E.P.'s care at Open Sky. Specifically, Open Sky provides behavioral health treatment, not "educational or recreational therapy."

75. Moreover, Premera has not disputed Plaintiffs' showing in their Second Level One Appeal that their claims for E.P.'s care in June and July 2022 at Open Sky were submitted in a timely manner.

COMPLAINT
Page - 14

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

76. Premera/the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in E.P.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of E.P.'s claims.

77. The actions of Premera and the Plan in denying payment for E.P.'s treatment at Open Sky are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**
**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

78. All allegations of this Complaint are incorporated here as though fully set forth herein.

79. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Premera's fiduciary duties.

80. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

81. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(3)(A)(ii).

82. Impermissible non-quantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

COMPLAINT
Page - 15

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

83. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for E.P.'s treatment include inpatient treatment settings such as hospice facilities and skilled nursing facilities.

84. In her Level One Member Appeal, Dawn expressed concern that the Plan, by its language, had imposed a facial, or as-written, NQTL on Open Sky by excluding it as part of an entire category.

85. Premera admitted to this exact NQTL in its First Level One Denial, when its reviewer wrote that the appeal denial was made on the Plan language stating that Wilderness therapy was not covered

86. With these exclusions, Premera/the Plan violated the MHPAEA by imposing more restrictive treatment limitations on mental health and substance use disorder benefits than those on medical/surgical benefits, as written in the language of the Plan.

87. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

88. Upon information and belief, Premera/the Plan's denial of coverage also violated the MHPAEA in application or effect.

89. The "Mental Health parity analysis" that Premera provided Plaintiffs does not convince Plaintiffs that Premera is in compliance with the MHPAEA. While that document does contain certain data, its conclusion that it is compliant with that statute is not supported by persuasive, objective reasoning.

90. The Defendants' violations of the MHPAEA by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3), including but not limited to:

    a. a declaration that the actions of Defendants violate the MHPAEA;

COMPLAINT
Page - 16

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

      b. an injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

      c. an Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

      d. an Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

      e. an Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

      f. an Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

      g. an Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

      h. an Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and for unjust enrichment.

90. In addition, Plaintiffs are entitled to an award of pre-judgment interest pursuant to U.C.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for E.P.'s treatment at Open Sky Wilderness Therapy;

2. Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

COMPLAINT
Page - 17

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

5.   For such further relief as the Court deems just and proper.

DATED this 24th day of February, 2025.

                              MERRICK, HOFSTEDT & LINDSEY, P.S.

                              */s/ Tamara Nelson*
                              Tamara K. Nelson, WSBA #27679
                              tnelson@mhlseattle.com
                              3101 Western Avenue, Suite 200
                              Seattle, Washington 98121
                              T: (206) 682-0610 / F: (206) 467-2689

                              *Counsel for Plaintiffs*

COMPLAINT
Page - 18

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610